**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| PREMIER PET PRODUCTS, LLC, | Civil Action No. 3:09-cv-293 |
| Plaintiff, | |
| v. | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | |
| Defendant. | |

Plaintiff Premier Pet Products, LLC ("Premier"), by counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, Local Civil Rule 56, and this Court's order of August 12, 2009, respectfully submits this Memorandum in Support of its Motion for Partial Summary Judgment.

## INTRODUCTION

Defendant Travelers Property Casualty Company Of America ("Travelers") has wrongfully refused to defend Premier in a federal lawsuit filed by Multi-Vet Ltd. ("Multi-Vet"), which asserted allegations of trademark infringement, false designation of origin, and common law unfair competition against Premier. Each of the claims in the Multi-Vet suit are potentially covered under the "Advertising Injury" provisions of Travelers' insurance policies concerning the infringement of "copyright, title or slogan," and therefore Travelers owes Premier a duty to defend that complaint.

A Virginia state court and a majority of jurisdictions that have ruled on the issue have held that an allegation of trademark infringement is a covered claim under the Advertising Injury provision of a commercial general liability insurance policy. Nonetheless, despite this growing

legal trend, and a clear allegation of trademark infringement made against its insured, Travelers denied its duty to defend Premier for the allegations in the Multi-Vet complaint.  Instead, upon tender of the complaint by Premier, Travelers responded with a boiler plate letter stating that none of the allegations in the complaint alleged covered "bodily injury" or "property damage," which injury or damage were clearly not even at issue.  It further erroneously stated that none of the allegations "constitute . . . 'advertising injury' . . . as those terms are defined in the policy." If Travelers had closely reviewed the initial complaint and fully researched the law,  as it had a good faith duty to do under Virginia law, it would have acknowledged that the Multi-Vet complaint was clearly alleging an advertising injury, and it would have agreed to defend the case.  Of course, if it still had doubts about coverage, it could have undertaken that defense pursuant to a reservation of rights.

By refusing to defend Premier, Travelers breached its contractual duty under its insurance policy with Premier.  There is no issue of material fact concerning the claims alleged against Premier in the Multi-Vet litigation.  Therefore, this Court may determine as a matter of law that Travelers was obligated to defend Premier in connection with the initial complaint in the Multi-Vet litigation.  Partial summary judgment should be granted in favor of Premier as to Travelers' duty to defend Premier in Multi-Vet litigation.[1]  Premier moves this Court for partial summary judgment on Counts I and II of its Complaint seeking a determination that Travelers is obligated to defend Premier in connection with the initial complaint in the Multi-Vet suit and breached its contractual duty by failing to do so.

---

[1]  The Court has invoked Local Civil Rule 56(c) and granted permission to Premier to bring this partial summary judgment motion, and has further agreed to give leave to file a second summary judgment brief in this case if one should be required to address the issues of bad faith and the Travelers' duty to indemnify Premier.

## STATEMENT OF UNDISPUTED FACTS
## PURSUANT TO LOCAL RULE 56(B)

**A.    The Multi-Vet Complaint.**[2]

Plaintiff Premier is a Virginia company in the business of manufacturing, marketing, advertising and selling dog collars that seek to control problem barking.  (*See* Complaint ¶¶ 1, 10; Answer ¶¶ 1, 10.)  On April 1, 2008, Multi-Vet, a Canadian competitor of Premier, filed a lawsuit against Premier in the United States District Court for the Southern District of New York (the "Initial Complaint").  (*See* Complaint ¶ 15; Answer ¶ 15; Affidavit of Matthew Guttman ("Guttman Aff."), Ex. A at ¶ 1.)  The gravamen of the Initial Complaint was the allegation by Multi-Vet that Premier infringed on its "Gentle Spray" trademark, which was the distinctive mark Multi-Vet used to advertise and sell its dog behavior modification and training spray products.  (Guttman Aff., Ex. A at ¶¶ 9-15)  The Initial Complaint alleged that these trademarks were recognized as originating from Multi-Vet and represented the company's business and good will, and that Premier infringed on these trademarks by selling dog training collars bearing the designations "Gentle Spray" and Gentle Leader Spray Sense."  (*Id.* at ¶16.)  Multi-Vet further alleged that Premier's actions gave rise to a likelihood of confusion, deception and mistake among the public, and thereby constituted unfair competition with Multi-Vet.  (*Id.* at ¶¶ 18, 20-21, 24-25, 31-32.)

The Initial Complaint specifically alleged:

> Premier has sold and is selling dog training collars in the United States bearing the infringing designations "Gentle Spray" and "Gentle Leader Spray Sense" in direct competition with Multi-Vet's products.  (*Id.* at ¶ 16.)

---

[2] References to the complaint and answer previously filed with the Court in this action will be referenced as "Complaint" and "Answer" respectively.

Premier' sale of dog training collars bearing the infringing designations "Gentle Spray" and "Gentle Leader Spray Sense" is without the permission, consent or authorization of Multi-Vet, constitutes trademark infringement, and gives rise to a likelihood of confusion, deception and mistake among the public. (*Id*. at ¶ 18.)

Premier's use of the "Gentle Spray" and "'Gentle Leader Spray Sense" designations to identify its dog training collars constitutes the offering of goods bearing, and the use of false and misleading descriptions and representations of fact in interstate commerce, and violates the Trademark Act of the United States. (*Id*. at ¶ 24.)

Based upon these allegations, the Initial Complaint asserted three counts, seeking both monetary damages and injunctive relief:

- Trademark Infringement in violation of the Lanham Act, 15 U.S.C. 1114(1);

- False Designation of Origin in violation of the Trademark Act, 15 U.S.C. 1125(a); and

- Common law unfair competition.

(*Id*. at ¶¶ 17-35.)

The Initial Complaint did not include any specific allegations as to when Premier's allegedly infringing conduct commenced. (*Id.*)

**B.    Defense Tendered to and Denied by Travelers.**

Shortly after being served with the Initial Complaint, Premier tendered it to Travelers, requesting that Travelers defend and indemnify it for the Multi-Vet Suit under the Advertising Injury coverage contained in the Web Xtend Liability Endorsement of its Travelers commercial general liability policy ("the Web Xtend Endorsement"). (Complaint ¶ 20.) Pursuant to the Web Xtend Endorsement, Travelers undertook to provide coverage for "those sums that the insured becomes legally obligated to pay as damages because of . . . 'advertising injury' or 'web site injury' to which this insurance applies." (Complaint ¶ 13; Answer ¶ 13; Guttman Aff., Ex. B,

Policy at B.1.a.)  In addition, it assumed the "right and duty to defend" in any suit seeking such damages.  (*Id.*)  Under the Web Xtend Endorsement, Travelers undertook to provide coverage for "'Advertising Injury' caused by an offense committed in the course of advertising your goods, products or services."  (*Id*. at B.1.b(1).)  The Web Xtend Endorsement defined "advertising injury" to include:

> injury arising out of . . . infringement of copyright, title or slogan, provided that claim is made . . . by a person or organization claiming ownership of such copyright, title or slogan.

(Complaint ¶ 14; Answer ¶ 14; Guttman Aff., Ex. B, Policy at V.c.)

On June 4, 2008, Travelers denied coverage to Premier and refused to defend it for the claims asserted in the Initial Complaint.  (Complaint ¶ 21, Answer ¶ 21; Affidavit of Chuck Mann ("Mann Aff.") at ¶ 4; Guttman Aff., Ex. C.)  In its denial letter, Travelers set forth multiple possible reasons it could find to deny coverage.  (Mann Aff. at ¶ 5; Guttman Aff., Ex. C.)  It cited Policy provisions that had nothing whatsoever to do with Premier's trademark infringement liability--i.e. those pertaining to bodily injury and property damage liability--and stated that there was no coverage for Premier under those provisions.  (Guttman Aff., Ex. C at pp. 2-3.)  It furthermore asserted that "[n]one of the allegations contained in the Complaint constitute [] 'advertising injury' or 'website injury', as those terms are defined in the policy."  (*Id*. at p. 6.)  In addition, the denial asserted that there were no allegations that Premier Pet committed one or more of the enumerated "'advertising injury' offenses in the course of advertising your goods, products or services" or "'web site injury' offenses while in the course of visual or audio presentation of material on 'your web site' . . ."  (*Id*.)  Travelers' denial letter did not cite any law

in support of its position that the allegations of trademark infringement contained in the Initial Complaint were not subject to coverage.  (Guttman Aff, Ex. C.) [3]

Faced with Travelers' denial of coverage, Premier retained and paid the Minnesota law firm of Merchant & Gould to defend it in connection with the Initial Complaint in the Multi-Vet Suit.  (Mann Aff. at ¶ 6.)

### C.    Travelers Accepts the Duty to Defend Under a Reservation of Rights.

On October 29, 2008, Multi-Vet served an amended complaint, adding Multi-Vet International Ltd. ("Multi-Vet International") as a plaintiff (the "Amended Complaint"). (Complaint ¶ 22; Answer ¶ 22; Guttman Aff., Ex. D.)  The differences between the Initial and Amended Complaint are extremely limited.  (Mann Aff. at ¶ 7; Guttman Aff., Ex. A and D.)  The Amended Complaint re-alleges all of the allegations contained in the Initial Complaint. (Guttman Aff., Ex. D.)  In addition, the Amended Complaint added allegations of trademark infringement, false advertising and unfair competition relating to another trademark, Multi-Vet's alleged "No Shock No Pain" trademark.  (Complaint ¶ 23; Answer ¶ 23; Guttman Aff., Ex. D at ¶¶ 18-22.)   The Amended Complaint also added the allegation that packaging, marketing, advertising and promotional materials for Multi-Vet's dog training collars have a distinctive trade dress that is widely recognized by the public as originating with Multi-Vet, and that Premier infringed upon that trade dress.  (Complaint ¶ 23; Answer ¶ 23; Guttman Aff., Ex. D at ¶¶ 24, 37-39.)   Based upon these allegations, the Amended Complaint asserted four claims seeking monetary damages and injunctive relief:

- Trademark Infringement in violation of Lanham Act, 15 U.S.C. 1114;

- False Designation of Origin in violation of the Trademark Act, 15 U.S.C. 1125(a);

---

[3] Travelers never disputed that the Initial Complaint contains allegations of trademark infringement and related conduct that occurred in course of Premier advertising and selling its products.  (Guttman Aff., Ex. C.)

- Common law unfair competition; and

- Declaratory Relief regarding the validity of Premier's trademark.

(Complaint ¶¶ 23-24; Answer ¶¶ 23- 24; Guttman Aff., Ex. D at pp. 6-10.)

Premier tendered the Amended Complaint to Travelers on October 31, 2008, again requesting that Travelers defend and indemnify it for the Multi-Vet Suit up to the limits of the Policies.  (Complaint ¶ 25; Answer ¶ 25; Mann. Aff. at ¶ 7.)  This time, Travelers agreed to provide a defense to Premier under a full reservation of rights in connection with the Amended Complaint—in other words for the period from October 31, 2008 forward.  (Complaint ¶ 26; Answer ¶ 26; Mann Aff. at ¶ 7; Guttman Aff., Ex. E.)  Travelers' letter agreeing to provide coverage did not include any explanation or analysis as to why Travelers agreed to defend Premier in connection with the allegations in the Amended Complaint, which were virtually identical to claims in the Initial Complaint, yet continued to deny Premier coverage in connection with the Initial Complaint.  (Mann Aff. at ¶ 8; Guttman Aff., Exs. A, D and E.)

### D.    Settlement of The Multi-Vet Suit.

In March, 2009, Premier and Multi-Vet reached an agreement to settle the Multi-Vet Suit for a specified sum.  (Complaint ¶ 27; Answer ¶ 27; Mann Aff. at ¶ 9.)  Premier provided Travelers with ample notice of its opportunity to settle the Multi-Vet Suit, but Travelers refused to cover or contribute to that settlement.  (Complaint ¶ 27; Mann Aff. at ¶ 9.)  With Travelers' permission, Premier entered into settlement and release with Multi-Vet, dated March 20, 2009 (the "Multi-Vet Settlement").  (*Id.*)  The Multi-Vet Suit has since been dismissed with prejudice. (Complaint ¶ 27; Answer ¶ 27; Mann Aff. at ¶ 9.)

Travelers has paid all of Premier's defense costs between October 31, 2008 and the resolution of the underlying dispute.  (Mann Aff. at ¶ 10.)

**E.      The Insurance Coverage Lawsuit.**

On August 12, 2008, Travelers filed a lawsuit against Premier and Multi-Vet in the United States District Court for the Eastern District of Virginia, seeking a declaration pursuant to 28 U.S.C. 2201 and 2002 regarding Travelers' obligation to defend or indemnify Premier with respect to the Multi-Vet Suit under the Policies or otherwise.  (Complaint ¶ 29; Answer ¶ 29.) Premier answered and filed a counterclaim seeking damages for breach of contract, a declaration that Travelers was obligated to defend or indemnify Premier with respect to the Multi-Vet Suit under the Policies, and for damages for Travelers' bad faith in denying coverage to Premier in the Multi-Vet Suit.  (Complaint ¶ 30; Answer ¶ 30.)  On January 13, 2009, the parties signed a stipulation dismissing the Travelers Suit without prejudice, with respect to Travelers' claim and Premier's counterclaim.  (Complaint ¶ 32; Answer ¶ 32.)

On May 5, 2009, after the Multi-Vet settlement, Premier recommenced the coverage litigation by filing the instant case.  (Complaint.)  At this time, Premier moves this Court for partial summary judgment seeking a determination that Travelers is obligated to defend Premier in connection with the Initial Complaint.  (*See* Complaint pp. 7-9.)

<u>**ARGUMENT**</u>

**I.      SUMMARY JUDGMENT STANDARD**

The standard for granting a plaintiff's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is well-defined.  Under Rule 56(c), Fed. R. Civ. P., a motion for summary judgment must be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  In considering whether to grant a motion for summary judgment, the court must assess the evidence offered by both parties and "determine whether there is a genuine issue for trial" after viewing the evidence in the light most

favorable to the non-moving party and resolving all factual disputes in that party's favor.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To defeat a summary judgment motion, the non-moving party may not rest upon mere allegations or denials, but must "set forth specific facts showing that there is a genuine issue for trial."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Earth Tech, Inc. v. U.S. Fire Ins. Co.*, 407 F. Supp. 2d 763, 767-768 (E.D. Va. 2006).

## II.     TRAVELERS HAS A DUTY TO DEFEND PREMIER IN CONNECTION WITH THE ALLEGATIONS CONTAINED IN THE MULTI-VET INITIAL COMPLAINT.

### A.     Virginia Law Imposes A Duty To Defend On Travelers.

It is well established under Virginia law that insurers are obligated to defend a lawsuit if it alleges "facts and circumstances, some of which, if proved, fall within the risk covered" by the purchased policies.  *Fuisz v. Selective Ins. Co. of Am.*, 61 F.3d 238, 242 (4th Cir. 1995) (citing *Parker v. Hartford Fire Ins. Co*., 222 Va. 33, 35, 278 S.E.2d 803 (1981)).  Pursuant to this so-called "Eight Corners Rule," a court determines an insurer's duty to defend based solely on a comparison of the four corners of the applicable insurance policy and the four corners of the underlying lawsuit's initial complaint.  *Bohreer v. Erie Ins. Group*, 475 F. Supp. 2d 578, 584 (E.D. Va. 2007).

This "eight corners rule" has been described as "a combination of the Exclusive Pleading and Potentiality Rules." A*merican Online, Inc. v. St. Paul Mercury Ins. Co*., 207 F. Supp. 2d 459, 465 (E.D. Va. 2002). The former provides that the duty to defend is determined solely by the claims asserted in the pleadings, and the latter provides that the duty to defend is triggered if there is any "potentiality" that the allegations could state a claim covered by the policy. *Solers, Inc. v. Harford Mut. Ins. Co*., 146 F. Supp. 2d 785, 791 (E.D. Va.2001); *Brenner v. Lawyers Title Ins. Corp.*, 397 S.E.2d 100, 102 (Va. 1990).  Under this hybrid Virginia rule, if the complaint

makes allegations that "may" be covered by the policy, the insurer has a duty to defend.  *Solers*, 146 F. Supp. 2d at 791.  In other words, where any claim alleged in a suit alleges *the potential* for coverage, an insurer has the duty to defend the entire action.  *Donnelly v. Transp. Ins. Co.*, 589 F.2d 761, 767 (4th Cir. 1978).  An insurer is relieved of the duty to defend "only when it clearly appears from the initial pleading the insurer would not be liable under the policy contract for any judgment based upon the allegations."  *Reisen v. Aetna Life and Casualty Co.*, 302 S.E.2d 529, 531 (Va. 1983).

Travelers' duty to defend should be determined in accordance with Virginia's strict adherence to the Eight Corners Rule.  As a result, in order to defeat Premier's motion for partial summary judgment, Travelers must affirmatively prove that the Initial Complaint contains no allegations whatsoever that permit proof of a claim potentially covered by the Policies.  *See, e.g., Parker v. Hartford Fire Ins. Co.*, 222 Va. 33, 35 (1981).  Accordingly, if Travelers cannot meet this burden, Premier's motion should be granted.

**B.     Trademark Infringement Is Covered Under The Standard Commercial General Liability Insurance Advertising Injury Provisions as Infringement of "Copyright, Title Or Slogan."**

**1.     Virginia Law Provides For Advertising Injury Coverage For Trademark Infringement.**

A Virginia court has held that a claim for trademark infringement constitutes an "advertising injury" under a CGL policy providing coverage for "infringement of copyright, title or slogan."  *See Northern Virginia Funeral Choices, Inc. v. Erie Ins. Co.*, No. 163598, 61 Va. Cir. 352, 2003 WL 1960687 at *2 (2003) (Guttman Aff., Ex. F).

In *Funeral Choices*, Northern Funeral Choices ("Funeral Choices") was a defendant in a suit that alleged claims of trademark infringement and common law unfair competition.  *Id*.  The underlying lawsuit involved a dispute over the use of the "funeral choices" mark in order to

designate certain funeral-related services offered for sale. *Id.* Funeral Choices tendered the complaint to its insurer, the Erie Insurance Company ("Erie") seeking defense and indemnity under the policy's "advertising injury" coverage. *Id.* at *1. Erie refused to provide coverage. *Id.*

In deciding in Funeral Choices favor, the court analyzed whether there was coverage for trademark infringement under the policy's "advertising injury" coverage for injuries arising out of "infringement of copyright, title or slogan." *Id.* at *2. Erie argued that trademark infringement was not a "qualifying offense" covered under this provision based on the decisions in *Advance Watch Co. v. Kemper National Insurance Co.*, 99 F.3d 795 (6th Cir. 1996) and *ShoLodge, Inc. v. Travelers Indemnity Co. of Illinois*, 168 F.3d 256 (6th Cir. 1999), which narrowly interpret a similar provision to deny coverage. *Id.* The Court flatly rejected Erie's coverage arguments and noted that the *Advance Watch* and *ShoLodge* decisions were subject to widespread criticism and had been expressly rejected by federal courts. *Id.* The Court reasoned "[w]here two constructions (of a policy term) are equally possible, that most favorable to the insured will be adopted." *Id.* (citation omitted). Moreover, the Court recognized that the modern and majority rule within the federal judiciary was that the "term 'infringement of copyright, title or slogan' was broad enough to encompass a claim for trademark infringement." *Id.* (citation omitted). The court held that Funeral Choices had stated a claim for advertising injury and that Erie was "liable for the costs of the defense and the amount of the judgment rendered." *Id.* at *5.

While this case is unpublished, it is predictive of what a Virginia court would do in this case. *See C.F. Trust, Inc. v. First Flight Ltd. Partnership*, 306 F.3d 126, 136 (4th Cir. 2002) (stating "[w]hen federal court attempts to predict how a state's highest court will rule on issue of state law, it may rely on unreported decisions out of that state; unreported status of decision limits, but does not eliminate, its predictive value."). The issue in *Funeral Choices* is identical to

that before this Court—i.e. whether an insured's alleged trademark infringement and unfair competition falls within the Advertising Injury offense of "infringement of copyright, title or slogan." Accordingly, the analysis and holding in *Funeral Choices* are persuasive authority that the trademark infringement claims alleged in the Multi-Vet lawsuit would be subject to coverage under the advertising injury provisions of the Travelers Web Xtend Endorsement.

      **2.**    **The Majority Of Courts Considering This Issue Have Found That Trademark Infringement Is Covered As An Advertising Injury.**

In the absence of controlling Virginia state law this Court can also consider precedent from other jurisdictions in determining how the Supreme Court of Virginia would rule. *See Tiger Fibers, LLC v. Aspen Specialty Ins. Co.*, 594 F. Supp. 2d 630, 648 (E.D. Va. 2009) (in predicting how state courts may rule, federal court sitting in diversity may consider cases from other jurisdictions, as well as restatements of law and treatises.).

The majority of courts considering whether trademark infringement claims constitutes "advertising injury" under an "infringement of copyright, title or slogan" provision have reached a conclusion similar to the Court in *Funeral Choices*, and have decided in favor of coverage. *See, e.g., Charter Oak Fire Ins. Co. v. Hedeen & Cos.*, 280 F.3d 730, 736 (7th Cir. 2002) (coverage awarded for infringement of toy manufacturer's MICRO MACHINE and MICRO MACHINE LOGO trademarks); *Fidelity and Guaranty Insurance Co. v. Kocolene Marketing Corp.*, IP 00-1106-C-T/K, 2002 WL 977855 (S.D. Ind. Mar. 26, 2002) at *10 (coverage awarded for infringement of tobacco manufacturer's MARLBORO trademarks) (Guttman Aff., Ex. G); *Gen. Cas. Co. Of Wisc. v. Wozniak Travel, Inc. D/B/A Hobbit Travel*, 762 N.W.2d 572, 578 (Minn. 2009) (court found that coverage for "infringement of title" in "advertising injury" provision of commercial general liability insurance policy extended to trademark infringement); *Capitol Indem. Corp. v. Elston Self Service Wholesale Groceries, Inc.*, No. 04 C 6536, 2008 WL

696919, *11 (N.D. Ill. Mar. 13, 2008) (coverage awarded for infringement of tobacco manufacturer's NEWPORT trademarks) (Guttman Aff., Ex. H); *Western Wis. Water, Inc. v. Quality Beverages of Wis., Inc*., 738 N.W.2d 114 (Wis. Ct. App. 2007) (coverage awarded for infringement of water distributor's LA CROSSE PREMIUM WATER trademark); and *Acuity v. Bagadia*, 750 N.W.2d 817, 826 (Wis. 2008)  (coverage awarded for infringement of computer software manufacturer's NORTON-related trademarks).

These decisions were based on the reviewing courts' determination that the term "title" in the phrase "infringement of copyright, title or slogan" was "broad enough to encompass claims of trademark infringement."  *See e.g. Charter Oak*, 280 F.3d at 736; *Western Wis. Water*, 738 N.W.2d at 121-122; *Kocolene*, 2002 WL 977855 at *10; *Acuity*, 750 N.W.2d at 826; *Wozniak Travel*, 762 N.W.2d at 578 (Minn. 2009).

For example, the court in *Charter Oak* provided two possible interpretations of the language in this provision, either one of which would result in a finding of coverage.  One interpretation was that "infringement of title 'presumably' involves titles 'of books, songs, products, services, and so forth' and is not clearly limited . . . to the infringement of a noncopyrightable title of a creative work."  *See Charter Oak*, 280 F.3d at 736 (internal citation omitted).  Under the second possible interpretation, "[r]eading these words together implies that 'infringement' means using someone else's words, so that 'title' refers to names and related trademarks, following the phrase 'copyright infringement.'"  *Id.*  (internal citation omitted).

*Charter Oak* has been cited by multiple courts for its analysis and determination that coverage for trademark infringement exists under infringement of "title."  *See e.g. Western Wis. Water*, 738 N.W.2d at 121-122; *Kocolene*, 2002 WL 977855 at *10.  In *Western Wis. Water*, the Wisconsin Court of Appeals reasoned that the "policy references infringement of copyright,

which is a distinct cause of action, along with infringement of title or slogan, which are not," and concluded that "the drafters of the policy language were not articulating recognized causes of action, but rather categories into which certain conduct might fall." *See Western Wis. Water*, 738 N.W.2d at 121-122.

Other courts have based their ruling on a "plain language approach."  For example, in *Wozniak Travel*, the Minnesota Supreme Court was persuaded by the reasoning of the Wisconsin Supreme Court's recent decision in *Acuity*, which adopted a broad construction of the plain meaning of the word "title," finding that trademark infringement fell "within the plain and ordinary meaning of 'infringement of title.'" *Wozniak*, 762 N.W.2d at 577.  Again, the court rejected the insurer's reliance on the out-dated holdings in *Advance Watch* and *ShoLodge*.

In *Kocolene*, the federal court also used a plain language approach and said that the "plain, ordinary meaning of the word 'title,'" as defined in *Black's Law Dictionary,* is a "mark, style or designation; a distinctive appellation; the name by which anything is known."  *See Kocolene*, 2002 WL 977855 at *10 (citation omitted).

The majority of federal and state courts faced with disputes over whether trademark infringement claims are subject to coverage under the "infringement of copyright, title or slogan" advertising injury provisions in a CGL policy has construed this provision in favor of coverage. Accordingly, these decisions provide instructive analysis for this Court.

      **3.**     **Travelers Has Been Involved In Multiple Prior Lawsuits Where Claims Of Trademark Infringement Were Subject To Coverage Under The Advertising Injury Provisions Contained In Its CGL Policies.**

It is significant that Travelers itself has been a party to multiple cases in which courts have held that trademark infringement claims are covered under the advertising injury provisions contained in its CGL policies.  *See e.g.*, *NorFab Corp. v. Travelers Indem. Co.*, 555 F. Supp. 2d

505 (E.D. Pa. 2008) (coverage awarded for infringement of fabric manufacturer's trademark and trade dress); *Finger Furniture Co., Inc. v. Travelers Indem. Co. of Ct.*, NO. CIV. A. H-01-2797, 2002 WL 32113755 (S.D. Tex. Aug. 19, 2002) (coverage awarded for trademark infringement) (Guttman Aff., Ex. I). *See also State Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co. of Am.,* 343 F.3d 249 (4th Cir. 2003) (coverage for infringement of Nissan trademark under Advertising Injury offense of "misappropriation of advertising ideas or style of doing business").

The decisions in the *NorFab* and *Finger Furniture* are particularly relevant here.  For example, in *NorFab*, the court held that Travelers was obligated to defend NorFab in connection with a lawsuit filed against it by PBI Performance Products, Inc. ("PBI"), where PBI alleged that NorFab infringed its trademark and trade dress rights.  555 F. Supp. 2d at 507.  At issue was the same Web Xtend Liability endorsement, at issue in the case at bar, which covered advertising injury "arising out of infringement of . . . title."  *Id.*

After being sued by PBI, NorFab requested that Travelers provide coverage for its defense in the PBI suit.  *Id.* at 507.  Travelers' letter denying NorFab's request for coverage, like the letter it wrote to Premier, stated "there are no allegations that NorFab committed one or more of the enumerated 'advertising injury' offenses in the course of advertising their goods, products or services."  The court held in favor of the insured and ruled that the word "title" was reasonably susceptible to different meanings and therefore ambiguous.  *Id.* at 509.  The court then rejected Traveler's narrow definition of the word "title" and held instead it that it has a broad definition which "encompasses any distinctive name, appellation or epithet," which includes trademarks.  *Id.* at 510.

The court next considered whether the underlying complaint alleged that NorFab had infringed PBI's rights in any distinctive name.  *Id.* at 511.  Pennsylvania law, similar to Virginia

law, provides that "an insurer's duty to defend 'arises whenever the an underlying complaint may 'potentially' come within the insurance coverage." *Id*. The court reviewed the allegations in the underlying complaint and focused on the following allegation:

> Upon information and belief, NorFab is distributing, selling, offering for sale, promoting and advertising its flame and thermal resistant textile fabrics bearing exact imitations of PBI's *said distinctive design mark*, the gold background with a contrasting checkered pattern, *PBI MATRIX*® mark, and/or the distinctive gold background with a contrasting checkered pattern Trade Dress . . . (emphasis added).

*Id*. (emphasis in original). In deciding in favor of coverage, the court found that this claim contained sufficient allegations of constituted trademark infringement in connection with NorFab's advertising and sale of its products. *Id*. at 512.

In *Finger Furniture*, the Magistrate recommended granting Finger's motion for summary judgment, which sought a determination that Travelers' was obligated to defend and indemnify Finger in connection with a suit filed against it by TruServ Corporation ("TruServ"). 2002 WL 32113755 at *1. The TruServ suit was based on Finger's alleged unauthorized use of "True Value" trade and service mark. *Id*. Specifically, TruServ claimed that Finger's acts constituted trademark infringement, dilution and unfair competition under the Lanham Action and violation of Texas law. *Id*. Finger sought coverage for its defense in TruServ suit under the "advertising injury liability" provision of its policy with Travelers. *Id*. at *7. Again, Travelers denied coverage asserting that none of the allegations in the underlying litigation qualified as an advertising injury under the policy. *Id*. at *2.

Subsequently, TruServ filed an amended complaint that did not add any new causes of action, but merely clarified that its claims stemmed from Finger's use of the subject mark in its advertising. *Id*. Just as in the instant case, Travelers agreed to defend from the date of the amended complaint forward. *Id*. at *3. Once again, the court held that Travelers was required to

defend Finder for the allegations of trademark infringement in the initial complaint under the "[i]fringement of copyright, title or slogan" provision. *Id*. at *7.  As in the Premier case, the policy did not define the terms "title" or "slogan." *Id*. at *10.  But by giving these terms their "plain meanings," the court found that "TRUE VALUE" could be considered either a "title or slogan," which would be subject to coverage under the policy. *Id*.

Texas law, like Virginia law, provides that an insurer's duty to defend arises if there is even "potentially, a case under the complaint with the coverage policy." *Id*. at *5.  Moreover, if policy language is susceptible to more than one reasonable interpretation then it is deemed ambiguous, and the court must "resolve the uncertainty by adopting the construction that most favors the insured." *Id*. at *6.  Based on the foregoing, the court concluded that the trademark infringement claims should be covered under the policy's advertising injury provision and Finger should be entitled to a defense from Travelers dating back to the original complaint. *Id*. at *12.

Despite having been ordered to provide coverage for such claims in multiple other suits, Travelers has once again taken the highly suspect position that trademark infringement claims are not covered under the advertising injury provisions of the Policies. As the courts in *NorFab* and *Finger Furniture* concluded that trademark infringement was subject to coverage under Travelers' policies, so to should this Court conclude in favor of coverage.

### D.      The Allegations of the Multi-Vet Initial Complaint Trigger Travelers' Duty to Defend as a Matter of Law.

Pursuant to Virginia's "Eight Corners Rule," Travelers has a duty to defend Premier in the Multi-Vet Suit.  Again, an insurer must provide a complete defense to its insured if the initial pleading sets forth at least one cause of action covered by the policy. *See Fuisz*, 61 F.3d 245.

There is no dispute that Multi-Vet's lawsuit against Premier is quintessentially one for trademark infringement.  The allegations throughout the Initial Complaint, which are set forth at

length *supra*, allege in detail Premier's violation of 15 U.S.C. § 1114, the Lanham Act, for

trademark infringement, as well as its violation of 15 U.S.C. § 11125(a), false designation of

origin, in addition to its common law unfair competition claims.  Multi-Vet's allegations are best

summed up in the "Facts Common to All Causes of Action" section, where it states:

> Premier has sold and is selling dog training collars in the United
> States bearing the infringing designations "Gentle Spray" and
> "Gentles Leader Spray Sense" in direct competition with Multi-
> Vet's products.

(Guttman Aff., Ex. A at ¶ 16.).  Elsewhere, Multi-Vet specifically alleges that on account of

Premier's activities, "Multi-Vet has suffered irreparable injury, including  to its reputation and

good will . . . "  (*Id.* at ¶ 22.).  Based upon this injury, both monetary and non-monetary, Multi-

Vet brought the lawsuit that Premier tendered to Travelers for defense under the Advertising

Injury coverage it purchased.

Following *Funeral Choices* and the plethora of cases from other jurisdictions, this Court

can rule that the advertising injury offense of "infringement of . . . title" encompasses Multi-

Vet's trademark infringement claims.   A review of these cases finds several compelling

rationales for coverage, particularly the one offered in *Wozniak* and *Kocolene*, that the "plain

language" interpretation of the term "title" encompasses a trademark.  Alternatively, if this Court

is to find the undefined policy term "title" to be ambiguous and reasonably susceptible of

multiple meanings, as did the courts in *NorFab* and *Finger Furniture*, then this ambiguity should

be interpreted against Travelers and in favor of Premier under Virginia rules of policy

construction.  *See, e.g., Northern Virginia Funeral Choices,* 2003 WL 1960687, at *1 (*citing

Solers, Inc. v. Harford Mut. Ins. Co.*, 146 F. Supp. 2d 785 (E.D. Va.2001)); *Hill v. State Farm

Mut. Auto. Ins. Co.*, 237 Va. 148, 375 S.E.2d 727, 730 (1989).  *See also Andrews v. American

Health & Life Ins. Co.*, 236 Va. 221, 372 S.E.2d 399, 401 (1988) (holding that if ambiguity is

found, the meaning that provides coverage is favored over the meaning that would deny coverage).  This rule of construction compels the conclusion that the word "title" should be read broadly to encompass a trademark.

Clearly, Travelers cannot meet its heavy burden to prove that it would not be liable under the Web Xtend Endorsement for *any* judgment based upon the allegations.  As such, it cannot be relieved of its duty to defend the Initial Complaint.  *See, e.g., Reisen*, 302 S.E.2d at 531.

<u>**CONCLUSION**</u>

For the above reasons, this Court should conclude as a matter of law, that Travelers had a duty to defend Premier in the Multi-Vet Suit in connection with the Initial Complaint.  Accordingly, partial summary judgment should be granted in favor of Plaintiff Premier Pet Products, LLC on its claims that Defendant Travelers Property Casualty Company Of America was obligated to defend it in the Multi-Vet Suit.

Respectfully Submitted,

**PREMIER PET PRODUCTS, LLC**

By Counsel

_____/s/_____
Collin J. Hite, Esquire
VSB #38869
Bethany K. Lukitsch
VSB #  42859
Attorneys for Premier Pet Products, LLC
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, Virginia  23219-4030
Phone: (804) 775-7791
Fax:  (804) 225-5404
chite@mcguirewoods.com

Margo S. Brownell, *admitted pro hac vice*
Matthew A. Guttman, *admitted pro hac vice*
Maslon Edelman Borman & Brand, LLP
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402
Phone: (612) 672-8200
Fax: (612) 672-8397

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of August, 2009, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

John B. Mumford, Jr., Esquire
Hancock, Daniel, Johnson & Nagle, P.C.
4701 Cox Road, Suite 400
Glen Allen, Virginia 23060
jmumford@hdjn.com


_____/s/_____
Collin J. Hite, Esquire
VSB #38869
Attorney for Premier Pet Products, LLC
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
Phone:  (804) 775-7791
Fax:  (804) 225-5405
chite@mcguirewoods.com